1   GARY M. RESTAINO
     United States Attorney
2   District of Arizona
     SARAH S. LETZKUS
3   Assistant U.S. Attorney
     Arizona State Bar No. 027314
4   GABRIEL A. PERAZA
     Assistant U.S. Attorney
5   Arizona State Bar No. 027428
     405 W. Congress Street, Suite 4800
6   Tucson, Arizona 85701
     Telephone: 520-620-7300
7   Email: Sarah.Letzkus@usdoj.gov
            Gabriel.Peraza@usdoj.gov
8   *Attorneys for Defendant*

9

10 IN THE UNITED STATES DISTRICT COURT

11 FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| 12   N.R., I.E.C.G., M.V.A., J.V.T., and E.A.G.V, on their own behalves and on behalf of their minor children, S.N.M.M., A.C.C., B.V.M., V.E.V.H., and Y.Y.G.P., | 4:23-CV-00201-JR |
| 13 | **UNITED STATES'** |
| 14 | **MOTION TO DISMISS** |
| 15               Plaintiffs, | |
| 16       vs. | |
| 17   United States of America, | |
| 18               Defendant. | |

19        Defendant United States of America (the "United States") respectfully moves to

20 dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure,

21 on the following two independent grounds: (1) this Court lacks subject matter jurisdiction

22 because Plaintiffs' claims are not cognizable under the Federal Torts Claims Act, 28 U.S.C.

23 § 2671, *et seq.* ("FTCA"); and (2) even if Plaintiffs' claims are cognizable under the FTCA,

24 Plaintiffs have failed to state a claim under Arizona law.[1]  This motion is supported by the

25 following Memorandum of Points and Authorities and attached Exhibits.

26

---

27 [1] Pursuant to LRCiv 12.1(c), the United States' counsel undersigned certifies that he
     conferred with Plaintiffs' counsel prior to filing this Motion to Dismiss.  However, the parties
28 were unable to agree that the pleading is curable by a permissible amendment.

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION.**

3         Plaintiffs consist of five separate families (with each of the five families consisting

4    of one parent and one child) and include Guatemalan and Honduran nationals.  The parents—

5    N.R.; I.E.C.G.; M.V.A.; J.V.T.; and E.A.G.V. (collectively, the "Parent Plaintiffs")—were

6    separated from their respective children—S.N.M.M.; A.C.C.; B.V.M.; V.E.V.H.; and

7    Y.Y.G.P. (collectively, the "Child Plaintiffs")—after the Plaintiffs unlawfully entered the

8    United States at various locations along the U.S.-Mexico border between 2017 and 2018.

9    The United States separated the Parent Plaintiffs from the Child Plaintiffs in accordance with

10   federal immigration laws and a then-existing federal policy to refer for prosecution all

11   individuals suspected of illegally entering the United States, including parents traveling with

12   children.  On June 20, 2018, the prior Administration issued an executive order formally

13   ending the policy of separating families at the U.S.-Mexico border.  *See* Exec. Order No.

14   13841.

15        Plaintiffs brought this action under the FTCA seeking monetary damages for alleged

16   injuries caused by their separation after their unlawful entry, and in some instances unlawful

17   reentry, into the United States.  The current Administration has denounced the prior practice

18   of separating children from their families at the United States-Mexico border, condemned

19   the human tragedy that occurred, and established a task force to continue efforts to reunify

20   families who had been separated.  The United States does not defend the policy choices that

21   led to family separations under the prior Administration's policies.  But Congress has not

22   waived the United States' sovereign immunity with respect to claims arising from policy

23   choices, regardless of their wisdom.  Plaintiffs make those claims here, so their claims fail

24   for lack of subject matter jurisdiction.  A court has jurisdiction to entertain suit against the

25   United States only "to the extent that is has waived its sovereign immunity."  *Reed ex rel.*

26   *Allen v. U.S. Dep't of the Interior*, 231 F.3d 501, 504 (9th Cir. 2000).  "[P]rescribing a cause

27   of action is a job for Congress, not the courts."  *Egbert v. Boule*, 142 S. Ct. 1793, 1800

28   (2022).  And, even if Congress had waived sovereign immunity, Plaintiffs have failed to state

1   a claim upon which relief can be granted for any of the torts they allege.  Plaintiffs' claims

2   should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6).

3   **II.      BACKGROUND.**

4        **A.      Statutory Framework for Noncitizens[2] Entering the United States.**

5            Noncitizens who arrive in the United States, including those who arrive at a

6   designated port of entry, are considered "applicant[s] for admission" and are "inspected by

7   immigration officers" to determine their admissibility to the United States.  8 U.S.C. §§

8   1225(a)(1), (a)(3) and (b).  If a noncitizen enters the United States "at any time or place other

9   than as designated by immigration officers" or otherwise "eludes examination or inspection

10  by immigration officers," he or she may be prosecuted for criminal immigration violations.

11  8 U.S.C. § 1325(a).  A violation of Section 1325(a) is a misdemeanor punishable by a fine

12  and imprisonment of up to six months for a first infraction.  *Id*.  Separately, 8 U.S.C. §

13  1326(a) makes it a crime punishable by fine and/or not more than two years imprisonment

14  for a noncitizen who has previously been removed from the United States to thereafter be

15  found in the United States, or to attempt to enter or enter the United States, without prior

16  approval.[3]  *Id*.

17            Individuals arriving or present in the United States who, following inspection, are

18  deemed inadmissible, are also subject to removal from the United States and, as appropriate,

19  detention pending removal.  8 U.S.C. §§ 1225(b), 1226 and 1357.  These provisions apply

20  to both adults and children.  Detention of noncitizens with final orders of removal is governed

21  by 8 U.S.C. § 1231(a).  "During the [90-day] removal period, the Attorney General *shall*

22  detain the [noncitizen]."[4]  *Id.* § 1231(a)(2) (emphasis added).  After the 90-day removal

---

[2] This motion uses the term "noncitizen" as equivalent to the statutory term "alien." *See Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (quoting 8 U.S.C. § 1101(a)(3)).

[3] As discussed more fully below, three of the five Parent Plaintiffs were subject to prior orders of removal. *See* Section II(E)(1), (2) and (5).

[4] The removal period lasts 90 days, and *begins* on the latest of the following: (1) the date the order of removal becomes administratively final; (2) if the removal order is judicially reviewed, and if a court orders a stay of the removal of the individual, the date of the court's final order; or (3) if the noncitizen is detained or confined (except under an immigration

1     period, "[i]f the noncitizen does not leave or is not removed within the removal period, the

2     [noncitizen], pending removal, shall be subject to supervision under regulations prescribed

3     by the Attorney General." *Id.* § 1231(a)(3). The federal government further possesses

4     statutory authority to "arrange for appropriate places of detention for [noncitizens] detained

5     pending removal or a decision on removal." *See* 8 U.S.C. § 1231(g)(1).

6           In some cases, the Department of Homeland Security ("DHS") may exercise its

7     discretion to release a noncitizen from custody pending a decision on removal. *See*, *e.g.*, *id*.

8     §§ 1182(d)(5) and 1226(a)(2). Those determinations are made under prescribed

9     circumstances on a "case-by-case basis." 8 U.S.C. § 1182(d)(5); 8 C.F.R. §§ 235.3(b)(2)(iii)

10    and (b)(4)(ii).

11
12         **B.**     **Statutory Framework for Immigration Custody of Unaccompanied Minors.**

13           Federal immigration law authorizes the government to provide for the custody of

14     children who are present in the United States without lawful immigration status.

15     Specifically, the Office of Refugee Resettlement ("ORR") in the Department of Health and

16     Human Services ("HHS") is charged with "the care and placement of unaccompanied

17     [noncitizen] children who are in federal custody by reason of their immigration status." 6

18     U.S.C. §§ 279(a), (b)(1)(A) and (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). The phrase

19     "unaccompanied [noncitizen] child" (hereinafter "UAC") is defined as a child who: (1) "has

20     no lawful immigration status in the United States," (2) "has not attained 18 years of age,"

21     and (3) for whom "there is no parent or legal guardian in the United States" or "no parent or

22     legal guardian in the United States is available to provide care and physical custody." 6

23     U.S.C. § 279(g)(2).

24           Under the William Wilberforce Trafficking Victims Protection Reauthorization Act

25     of 2008 ("TVPRA"), agencies "shall transfer" a child to ORR custody "not later than 72

26     hours after determining that such child is an unaccompanied [noncitizen] child," absent

27     exceptional circumstances. 8 U.S.C. § 1232(b)(3). ORR seeks to place UACs "in the least

28     process), the date the individual is released from detention or confinement. *Id.* § 1231(a)(1).

restrictive setting that is in the best interest of the child." *Id*. § 1232(c)(2)(A).  However, ORR "shall not release such children upon their own recognizance."  6 U.S.C. § 279(2)(B).  Once ORR takes custody, it must follow detailed statutory and regulatory provisions before releasing a child to an approved sponsor.  8 U.S.C. § 1232(c)(3).  ORR cannot transfer custody of a UAC "*unless* the Secretary of [HHS] makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being" and that determination "*shall*, at a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." *Id*. § 1232(c)(3)(A) (emphasis added).  A home study is sometimes required.  *Id*. § 1232(c)(3)(B).

### C.    Flores Agreement Requirements.

In 1997, the Central District of California Court approved a settlement between a plaintiff class and the federal government that is referred to as the "Flores Agreement." *Flores v. Sessions*, 862 F.3d 863, 869 (9th Cir. 2017).  The Flores Agreement "sets out nationwide policy for the detention, release, and treatment of minors" in immigration authorities' custody.  *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing Flores Agreement, at ¶ 9).  According to the Ninth Circuit, the Flores Agreement "unambiguously" applies to both unaccompanied minors and minors who are encountered with their parents or guardians.  *Id*. at 901.  Under the agreement, the government must expeditiously transfer any minor who cannot be released from custody to a non-secure, licensed facility.  *Id*. at 902-03 (quoting Flores Agreement, at ¶ 12).  The government must also "make and record the prompt and continuous efforts on its part toward . . . releasing the minor." *Flores v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020) (quoting Flores Agreement, at ¶ 14).

Notably, the Flores Agreement applies only to minors.  *Flores v. Lynch*, 828 F.3d at 901.  It does not address "the housing of family units and the scope of parental rights for adults apprehended with their children," and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Id*. at 906; *see also United States v. Dominguez-Portillo*, No. EP-17-MJ-4409, 2018 WL 315759, at *9 (W.D.

Tex. Jan. 5, 2018) (The Flores Agreement "does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities . . ."), *aff'd sub nom*. *United States v. Vasquez-Hernandez*, 924 F.3d 164 (5th Cir. 2019).  Nor does the Flores Agreement provide any rights to adult detainees, including any rights of release. *Flores v. Lynch*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, No. A.07-CA-16A, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007).  Although the Flores Agreement gives preference to the release of minors to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice."  *Flores v. Lynch*, 828 F.3d at 908.

**D.    Executive Branch Directives Regarding Immigration Enforcement.**

During the relevant timeframe (2017-2018), the Executive Branch issued several directives regarding enforcement of federal immigration laws.  First, on January 25, 2017, former President Trump issued signed Executive Order 13767 titled "Border Security and Immigration Enforcement Improvements."  *See* § 1, 82 Fed. Reg. 8793 (Jan. 30, 2017) ("EO 13767").  EO 13767 directed: "[i]t is the policy of the executive branch to . . . detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations . . ." *Id*. § 2(b).  EO 13767 further directed DHS to "ensure the detention of [noncitizens] apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country," and to exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute . . . and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole."  *Id*. §§ 6 and 11(d).

Second, on April 11, 2017, Attorney General Jefferson Sessions issued guidance to all federal prosecutors regarding a renewed commitment to criminal immigration enforcement and directed that federal law enforcement agencies prioritize the prosecution of several immigration offenses, including illegal entry under 8 U.S.C. § 1325 and illegal

reentry of individuals who had been removed previously under 8 U.S.C. § 1326.  *See* U.S. DOJ Memorandum on Renewed Commitment to Criminal Immigration Enforcement (April 11, 2017).

Third, on April 6, 2018, Attorney General Jefferson Sessions issued a memorandum that directed "each United States Attorney's Office along the Southwest Border—to the extent practicable, and in consultation with DHS—to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under" 8 U.S.C. § 1325(a), which prohibits unlawful entry into the United States (the "DOJ Zero-Tolerance Policy").  *See* Memorandum for Federal Prosecutors Along the Southwest Border, DOJ 18-417.  Additionally, on May 4, 2018, DHS Secretary Kirstjen Nielsen approved a policy of referring for prosecution, to the extent practicable, all adults who unlawfully crossed the Southwest border of the United States, including those initially arriving with minors (the "DHS Referral Policy").  The DHS Referral Policy applied to all amendable adults, including parents or legal guardians traveling with minor children.

Consistent with these directives, DHS began to refer for prosecution increased numbers of adults—including those traveling with children—who unlawfully entered the United States along the Southwest border in violation of Section 1325.  Children designated as UACs were transferred to ORR custody, as the TVPRA required.  *See* 8 U.S.C. § 1232(b)(3).  The UACs were placed in non-secure, licensed facilities, as required by the Flores Agreement.  *Flores v. Lynch*, 828 F.3d at 902-03 ("[DHS] must transfer the minor to a non-secure, licensed facility[.]").  The parents remained in secure detention facilities pending removal proceedings.

### E.   Detention, Separation, and Reunification of Plaintiffs.

#### 1.   N.R. and S.N.M.M.

According to the Complaint, plaintiffs N.R. and S.N.M.M. are a father and daughter who were apprehended and detained by United States Customs and Border Protection ("CBP") agents on January 27, 2018, after unlawfully entering the United States in Arizona.  *See* Complaint, at ¶ 15; *see also* the Declaration of Shawn Jordan (the "CBP Decl."), attached

1    hereto as **Exhibit 1**, at ¶ 3.  S.N.M.M. was 8 years old at the time.  Complaint, at ¶ 15.

2        After N.R. was apprehended and detained by CBP agents, he was referred for

3    prosecution under 8 U.S.C. §§ 1325 and 1326.  *See* Ex. 1, CBP Decl., at ¶ 3.  N.R. was

4    referred for prosecution under 8 U.S.C. § 1326 because he had previously entered the United

5    States unlawfully and was subject to a prior order of removal.  *See* the Declaration of Jason

6    A. Ciliberti (the "ICE Decl."), attached hereto as **Exhibit 2**, at ¶ 5.  Based on CBP's decision

7    to refer N.R. for prosecution under 8 U.S.C. §§ 1325 and 1326, S.N.M.M. was designated a

8    UAC and transferred to ORR custody.  *See* Ex. 1, CBP Decl., at ¶ 3; *see also* Ex. 2, ICE

9    Decl., at ¶¶ 4-6; *see also* the Declaration of James De La Cruz (the "ORR Decl."), attached

10   hereto as **Exhibit 3**, at ¶¶ 12-13.  As a result, N.R. and S.N.M.M. were separated.  *See id.*;

11   *see also* Complaint, at ¶ 72.  S.N.M.M. was admitted to Cayuga Centers, an ORR-contractor

12   facility.   *See* Complaint, at ¶ 77; *see also* Ex. 3, ORR Decl., at ¶ 13.  N.R. and S.N.M.M.

13   were reunited after S.N.M.M. was repatriated to Honduras on or about August 28, 2018.  *See*

14   Complaint, at ¶ 83; *see also* Ex. 3, ORR Decl., at ¶ 13.

15            **2.     I.E.C.G. and A.C.C.**

16       According to the Complaint, plaintiffs I.E.C.G. and A.C.C. are a mother and son who

17   were apprehended and detained by CBP agents on January 8, 2018, after unlawfully entering

18   the United States in Arizona.  *See* Complaint, at ¶ 16; *see also* Ex. 1, CBP Decl., at ¶ 4.

19   A.C.C. was 4 years old at the time.  Complaint, at ¶ 16.

20       After I.E.C.G. was apprehended and detained by CBP agents, she was referred for

21   prosecution under 8 U.S.C. §§ 1325 and 1326.  *See* Ex. 1, CBP Decl., at ¶ 4.  I.E.C.G. was

22   referred for prosecution under 8 U.S.C. § 1326 because she had previously entered the United

23   States unlawfully and was subject to a prior order of removal.  *See* Ex. 2, ICE Decl., at ¶ 8.

24   Based on CBP's decision to refer I.E.C.G. for prosecution under 8 U.S.C. §§ 1325 and 1326,

25   A.C.C. was designated a UAC and transferred to ORR custody.  *See* Ex. 1, CBP Decl., at ¶

26   4; *see also* Ex. 2, ICE Decl., at ¶¶ 7-9; *see also* Ex. 3, ORR Decl., at ¶¶ 12 and 14.  As a

27   result, I.E.C.G. and A.C.C. were separated.  *See id.*; *see also* Complaint, at ¶ 58.  A.C.C. was

28   admitted to Cayuga Centers, an ORR-contractor facility.   *See* Complaint, at ¶ 63-64; *see*

*also* Ex. 3, ORR Decl., at ¶ 14.  I.E.C.G. and A.C.C. were reunited on or around June 8, 2018.  *See* Complaint, at ¶ 68; *see also* Ex. 3, ORR Decl., at ¶ 14.

### 3.   M.V.A. and B.V.M.

According to the Complaint, plaintiffs M.V.A. and B.V.M. are a father and daughter who were apprehended and detained by CBP agents on or around May 13, 2018, after unlawfully entering the United States in Arizona.  *See* Complaint, at ¶ 17; *see also* Ex. 1, CBP Decl., at ¶ 5.  B.V.M. was 9 years old at the time.  Complaint, at ¶ 17.

After M.V.A. was apprehended and detained by CBP agents, he was referred for prosecution under 8 U.S.C. § 1325 and removal proceedings under 8 U.S.C. § 1182.  *See* Ex. 1, CBP Decl., at ¶ 5.  Based on CBP's decision to refer M.V.A. for prosecution under 8 U.S.C. § 1325, B.V.M. was designated a UAC and transferred to ORR custody.  *See* Ex. 1, CBP Decl., at ¶ 5; *see also* Ex. 2, ICE Decl., at ¶¶ 10-11; *see also* Ex. 3, ORR Decl., at ¶¶ 12 and 15.  As a result, M.V.A. and B.V.A. were separated.  *See id.*; *see also* Complaint, at ¶ 86.  B.V.A. was admitted to Catholic Charities Boystown, an ORR-contractor facility.  *See* Complaint, at ¶ 87; *see also* Ex. 3, ORR Decl., at ¶ 15.  M.V.A. and B.V.A. were reunited after B.V.A. was repatriated to Guatemala on or around September 24, 2018.  *See* Complaint, at ¶ 92; *see also* Ex. 3, ORR Decl., at ¶ 15.

### 4.   J.V.T. and V.E.V.H.

According to the Complaint, plaintiffs J.V.T. and V.E.V.H. are a father and son who were apprehended and detained by CBP agents on May 19, 2018, after unlawfully entering the United States in Arizona.  *See* Complaint, at ¶ 18; *see also* Ex. 1, CBP Decl., at ¶ 6.  V.E.V.H. was 13 years old at the time.  Complaint, at 18.

After J.V.T. was apprehended and detained by CBP agents, he was referred for prosecution under 8 U.S.C. § 1325 and removal proceedings under 8 U.S.C. § 1182.  *See* Ex. 1, CBP Decl., at ¶ 6.  Based on CBP's decision to refer J.V.T. for prosecution under 8 U.S.C. § 1325, V.E.V.H. was designated a UAC and transferred to ORR custody.  *See* Ex. 1, CBP Decl., at ¶ 6; *see also* Ex. 2, ICE Decl., at ¶¶ 12-14; *see also* Ex. 3, ORR Decl., at ¶¶ 12 and 16.  As a result, J.V.T. and V.E.V.H. were separated.  *See id.*; *see also* Complaint, at ¶ 97.

1    V.E.V.H. was admitted to The Villages, an ORR-contractor facility.   *See* Complaint, at ¶

2    100; *see also* Ex. 3, ORR Decl., at ¶ 16.  V.E.V.H. was discharged from ORR custody on or

3    around July 3, 2018, and was later deported with J.V.T. on or around January 17, 2019.  *See*

4    Complaint, at ¶ 103; *see also* Ex. 2, ICE Decl., at ¶ 14; *see also* Ex. 3, ORR Decl., at ¶ 16.

5                         **5.      E.A.G.V. and Y.Y.G.P**

6           According to the Complaint, plaintiffs E.A.G.V. and Y.Y.G.P. are a father and

7    daughter who were detained by CBP agents on or around November 27, 2017.  *See*

8    Complaint, at ¶ 19.  CBP records reflect that E.A.G.V. and Y.Y.G.P. were detained on

9    November 28, 2017 at the San Luis Port of Entry in San Luis, Arizona when E.A.G.V.

10   applied for admission to the United States.  *See* the Declaration of Jolene Reynaga (the "OFO

11   Decl."), attached hereto as **Exhibit 4**, at ¶ 3.   Y.Y.G.P. was 4 years old at the time.

12   Complaint, at ¶ 19.

13          After E.A.G.V. was detained by CBP agents, it was subsequently determined that

14   E.A.G.V. was inadmissible to the United States and was placed into removal proceedings

15   pursuant to Section 240 of the Immigration and Nationality Act.[5]  *See* Ex. 4, OFO Decl., at

16   ¶ 3.  E.A.G.V. had previously entered the United States unlawfully and was ordered removed

17   *in absentia* on May 18, 2004.  *See* Ex. 2, ICE Decl., at ¶ 16.  Because E.A.G.V. was detained

18   and subject to removal proceedings, Y.Y.G.P. was designated a UAC and transferred to ORR

19   custody.  *See* Ex. 4, OFO Decl., at ¶ 3; *see also* Ex. 2, ICE Decl., at ¶¶ 15-17; *see also* Ex.

20   3, ORR Decl., at ¶¶ 12 and 17.  As a result, E.A.G.V. and Y.Y.G.P. were separated.  *See id.*;

21   *see also* Complaint, at ¶ 108.  Y.Y.G.P. was admitted to Upbring, an ORR-contractor facility.

22   *See* Complaint, at ¶ 111; *see also* Ex. 3, ORR Decl., at ¶ 17.  Y.Y.G.P. was reunited with her

23   mother on or around January 19, 2018.  *See* Complaint, at ¶ 112; *see also* Ex. 3, ORR Decl.,

24   at ¶ 17.

25          **F.      The Claims Asserted in Plaintiffs' Complaint.**

26          Plaintiffs filed this lawsuit against the United States on April 27, 2023.  Plaintiffs

27   _____
     [5] E.A.G.V. is the only Parent Plaintiff who was not referred for prosecution since he
28   presented at a port of entry.  However, he was detained for the purpose of being placed in
     removal proceedings since he was determined to be inadmissible.

1  asserted five counts in their Complaint: (1) intentional infliction of emotional distress
2  ("IIED"); (2) negligence; (3) negligent supervision; (4) abuse of process; and (5) loss of
3  consortium.  Complaint, at ¶¶ 116-148.

4  **III.    LEGAL STANDARDS.**

5          A defendant may move to dismiss a complaint for lack of subject matter jurisdiction
6  under Rule 12(b)(1), Federal Rules of Civil Procedure.  Courts must consider the threshold
7  issue of jurisdiction before addressing the merits of a case.  *Steel Co. v. Citizens for a Better*
8  *Env't*, 523 U.S. 83, 94 (1998).  Plaintiffs bear the burden of establishing jurisdiction to
9  survive a motion to dismiss.  *Thornhill Pub. Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730,
10  733 (9th Cir. 1979); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).
11  The court may look beyond the complaint's allegations to determine whether subject matter
12  jurisdiction exists.  *Adler v. Fed. Republic of Nigeria*, 107 F.3d 720, 728 (9th Cir. 1997).
13  The Court can also hear evidence outside the pleadings and resolve factual disputes, if
14  necessary, without treating the motion as one for summary judgment.  *Robinson v. United*
15  *States*, 586 F.3d 683, 685 (9th Cir. 2009).

16          Additionally, a defendant may move to dismiss a complaint for failure to state a claim
17  under Rule 12(b)(6), Federal Rules of Civil Procedure.  To avoid dismissal, a complaint must
18  contain "more than labels and conclusions, and a formulaic recitation of the elements of a
19  cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The
20  factual allegations "must be enough to raise a right to relief above the speculative level" and
21  must be sufficient to "state a claim to relief that is plausible on its face."  *Id*. at 555, 570.  A
22  claim has "facial plausibility" when the plaintiff pleads factual content that "allows the court
23  to draw the reasonable inference that the defendant is liable for the misconduct alleged."
24  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

25  **IV.    ARGUMENT.**

26          The current Administration has disavowed policies during the prior Administration
27  that resulted in the separations of families.  Nonetheless, Congress has not waived the United
28  States' sovereign immunity with respect to claims arising from those policies.  Plaintiffs'

Complaint challenges discretionary decisions that are susceptible to policy analysis, including policies regarding law enforcement, immigration laws, and national security. It also challenges actions taken by federal employees while reasonably enforcing federal immigration statutes and regulations. Statutory exceptions to the FTCA's limited waiver of the United States' sovereign immunity preclude these types of claims, so this Court should dismiss this case due to its lack of subject matter jurisdiction. Further, Plaintiffs' Complaint fails to state a claim upon which relief can be granted, and dismissal is warranted on that ground independently.

**A.      Congress Has Not Waived the Unites States' Sovereign Immunity For Plaintiffs' Claims, and Therefore this Court Lacks Subject Matter Jurisdiction.**

The United States, as a sovereign entity, "is immune from suit except insofar as it has specifically and expressly consented to be sued." *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981) (quotation omitted). "[T]he terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman*, 453 U.S. at 160 (internal quotes and citations omitted). Absent a specific, express waiver, sovereign immunity bars a suit against the government. *FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994).

The FTCA is a "limited waiver of the United States' sovereign immunity." *Gonzalez v. United States*, 814 F.3d 1022, 1026 (9th Cir. 2016). The statute allows suit against the United States when a federal employee acting within the scope of his or her employment causes "injury, loss of property, or personal injury or death." 28 U.S.C. § 1346(b)(1). However, the FTCA's waiver of sovereign immunity is subject to exceptions. 28 U.S.C. § 2680. When an exception applies, the United States retains sovereign immunity, and the claim must be dismissed. *Mundy v. United States*, 983 F.2d 950, 952 (9th Cir. 1993). As discussed below, several exceptions to the FTCA's limited waiver of sovereign immunity apply here, any of which precludes Plaintiffs' claims.

**1.      Plaintiffs' Claims are Impermissible Institutional or Systemic Tort Claims.**

The FTCA's limited waiver of sovereign immunity makes the United States liable

1    only under principles of *respondeat superior* for the negligent or wrongful acts or omissions

2    of "employee[s] of the Government" while acting within the scope of their employment. *See*

3    28 U.S.C. § 1346(b)(1); *see also Laird v. Nelms*, 406 U.S. 797, 801 (1972) (FTCA's

4    legislative history "indicates that Congress intended to permit liability essentially based on

5    the intentionally wrongful or careless conduct of Government employees, for which the

6    Government was to be made liable according to state law under the doctrine of *respondeat*

7    *superior*").    Thus, a plaintiff suing under the FTCA cannot assert "institutional" or

8    "systemic" claims to hold the United States liable based on the conduct of an agency of the

9    government as a whole.    Rather, a plaintiff must allege tortious acts or omissions by

10    individual federal employees, acting within the scope of their employment, for whom the

11    United States has assumed *respondeat superior* liability under the FTCA.[6]

12          Plaintiffs' challenges to federal immigration policies, including a general policy of

13    enforcing federal immigration laws and specific policies such as the DHS Referral Policy

14    and the DOJ Zero-Tolerance Policy, are quintessentially claims based on policymaking or

15    agency-wide conduct that fail under the FTCA.    Importantly, Plaintiffs admit that only two

16    of the five family separations at issue in this case took place *after* the adoption of the DOJ

17    Zero-Tolerance Policy (on April 6, 2018) and DHS Referral Policy (on May 4, 2018). *See*

18    Complaint at ¶¶ 15-19.    Therefore, three of the family separations at issue resulted from

19    general public policy considerations; namely, the enforcement of federal immigration laws.

20    In addition to challenging a general policy of enforcing federal immigration laws, Plaintiffs

21    challenge the government's specific policymaking on immigration matters:

22

23    [6] *See, e.g.*, *Meier v. United States*, No. C 05-04404, 2006 WL 3798160, at *3-4 (N.D. Cal. Dec. 22, 2006) (dismissing claim based on corporate negligence theory), *aff'd*, 310 F. App'x 976 (9th Cir. 2009); *Lee v. United States*, No. CV1908051, 2020 WL 6573258, at *6 (D. Ariz. Sept. 18, 2020) (dismissing claims of "generalized theories of negligence asserted against the staff and employees of federal institutions as a whole" for lack of jurisdiction); *F.R. v. United States*, No. CV-21-00339, 2022 WL 2905040 at *3 (D. Ariz. July 22, 2022) ("[A] cognizable FTCA claim must be predicated on the tortious misconduct of individual government employees, rather than on alleged wrongdoing by the United States or its agencies writ large."); *B.A.D.J. v. United States*, No. CV-21-00215, 2022 WL 11631016 at *5 (D. Ariz. Sept. 30, 2022) ("To the extent Plaintiffs allege harms resulting from policymaking or agency-wide misconduct, the Court lacks subject matter jurisdiction over those claims.").

1
2

- "[B]etween July and November 2017, *the government* established a family separation pilot program in CBP's El Paso sector. . ."  (Complaint, at ¶ 28 (emphasis added)).

3

- "Through this initiative, *the government* separated nearly 280 families between July and November 2017." (Complaint, at ¶ 28 (emphasis added)).

4
5

- "By late 2017, *the government* was separating families along the length of the U.S.-Mexico border . . ."  (Complaint, at ¶ 29 (emphasis added)).

6
7

- "[T]he *United States government* put no mechanism in place to reunify separated families following the completion of the parent's criminal sentence."  (Complaint, at ¶ 32 (emphasis added)).

8

- "*Administration officials* at the highest levels . . . implemented a practice of separating families . . ."  (Complaint, at ¶ 33 (emphasis added)).

9
10

- "*[T]he government* went forward with its policy of *mass* family separation . . ." (Complaint, at ¶ 44 (emphasis added)).

11

- "*[T]he government* instituted and implemented this program . . ." (Complaint, at ¶ 57 (emphasis added)).

12 However, the FTCA is not a vehicle to challenge the government's general policy of

13 enforcing federal immigration laws or specific policymaking that resulted in mass family

14 separation.  *See J.P. v. United States*, No. CV-22-00683-PHX-MTL, 2023 WL 4237331, at

15 *5 (D. Ariz. June 28, 2023) ("[T]o the extent that any of Plaintiffs' other claims are also

16 asserted as to actions of the 'U.S. Government,' 'U.S. Government officials,' and

17 unidentified 'high-ranking federal officials,' those claims are barred as institutional torts and

18 must be dismissed.").

19        Congress has elected not to subject the federal government to monetary damages for

20 policies that cause systemic harm.  In 42 U.S.C. § 1983, Congress subjected municipalities

21 to money damages for unconstitutional policies.  But § 1983 is the mirror image of the

22 FTCA's limited waiver of immunity, in that municipalities can be held liable only for

23 unconstitutional actions taken "pursuant to official municipal policy" and not based upon

24 *respondeat superior* principles for the acts or omissions of individual employees.  *See Monell*

25 *v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978); *Ouellette v. Beaupre*,

26 977 F.3d 127, 141 (1st Cir. 2020) ("The FTCA, unlike § 1983, '[i]n substance . . . adopts

27 respondeat superior liability for the United States.'") (quoting *Solis- Alarcón v. United*

28 *States*, 662 F.3d 577, 583 (1st Cir. 2011)).  "The 'official policy' requirement was intended

- 14 -

1    to distinguish acts of the municipality from acts of employees of the municipality, and

2    thereby make clear that municipal liability is limited to action for which the municipality is

3    actually responsible.  *Monell* reasoned that recovery from a municipality is limited to acts

4    that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality

5    has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81

6    (1986); *see also Owen v. City of Independence*, 445 U.S. 622, 657 (1980) ("[T]he public will

7    be forced to bear only the costs of injury inflicted by the 'execution of a government's policy

8    or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be

9    said to represent official policy.'") (quoting *Monell*, 436 U.S. at 694).

10        In contrast to the liability of municipal entities under §1983, the federal government

11   cannot be held institutionally liable under the FTCA for official policies, regardless of

12   whether such a policy violates the Constitution.[7]  The United States is aware of no cases

13   finding the federal government liable under the FTCA for high-level policy decisions.

14        Accordingly, Plaintiffs' claims challenging official agency policymaking cannot be

15   a basis to impose FTCA liability based on principles of *respondeat superior*.  Regardless of

16   how Plaintiffs characterize or label their claims, they indisputably arise out of separations

17   resulting from the enforcement of federal immigration laws.  As previously indicated, three

18   of the five family separations at issue took place *before* the DOJ Zero-Tolerance Policy and

19   DHS Referral Policy.  *See* Complaint at ¶¶ 15-19.  Therefore, Plaintiffs' claims are not

20   cognizable under the FTCA.

21

22

23   [7] Although individual federal officers may be subject to liability in their personal capacities
     for violating the Constitution under certain circumstances, *see Bivens v. Six Unknown Fed.*
24   *Bureau of Narcotics Agents*, 403 U.S. 388 (1971), "a *Bivens* action is not a 'proper vehicle
     for altering an entity's policy.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) (quoting
25   *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)); *see also Meyer*, 510 U.S. at 485
     ("[T]he purpose of *Bivens* is to deter *the officer*.").  For this very reason, in *Meyer* the
26   Supreme Court held that constitutional torts were not cognizable under the FTCA and
     declined to imply a *Bivens* cause of action directly against federal agencies.  *See* 510 U.S. at
27   478, 485; *see also Malesko*, 534 U.S. at 71 ("If deterring the conduct of a policymaking
     entity was the purpose of *Bivens*, then *Meyer* would have implied a damages remedy against
28   the [FDIC]; it was after all an agency policy that led to Meyer's constitutional deprivation.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**2.      Plaintiffs' Claims Are Barred by the Discretionary Function Exception.**

**a.      Legal Standard for Discretionary Function Exception Analysis.**

One exception to the FTCA's waiver of sovereign immunity is the discretionary function exception (the "DFE").  The DFE bars "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a); *see also United States v. Gaubert*, 499 U.S. 315, 325 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

The Supreme Court has set forth a two-part test to determine if the DFE applies. *Gaubert*, 499 U.S. at 328-32.  Courts must first ask whether the challenged conduct "involve[s] an 'element of judgment or choice,'" as determined by the "'nature of the conduct, rather than the status of the actor.'"  *Marchiona v. United States*, No. 821CV01476, 2023 WL 2558537, at *3 (C.D. Cal. Jan. 26, 2023) (quoting *Gaubert*, 499 U.S. at 322); *see also Berkovitz*, 486 U.S. at 536; *Chadd v. United States*, 794 F.3d 1104, 1109 (9th Cir. 2015). The first prong is met unless "'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'"  *Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996) (quoting *Berkovitz*, 486 U.S. at 536); *see also Kelly v. United States*, 241 F.3d 755, 761 (9th Cir. 2001) ("[A] general regulation or policy . . . does not remove discretion unless it specifically prescribes a course of conduct."); *Reed ex rel. Allen v. U.S. Dep't of Interior*, 231 F.3d 501, 504 (9th Cir. 2000) (since "[n]o federal statute, regulation, or policy require[d] a particular course of action," the agency's actions "could be no other way than by the exercise of discretion").

Thus, where no federal statute, regulation or policy prescribes a specific course of action to follow, the challenged conduct involves an element of judgment.  *See Berkovitz*, 486 U.S. at 536.  Even if a regulation contains a mandate to do something, if that mandate involves judgment or choice, the discretion element is satisfied.  *See GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174-75 (9th Cir. 2002).  Further, where the policies that

1    inform the conduct at issue allow the exercise of discretion, the agency's acts or failures to

2    act are presumed to be discretionary.  *Lam v. United States*, 979 F.3d 665, 674 (9th Cir.

3    2020).  Finally, the applicable policies and authorities must be considered in context—"the

4    presence of a few, isolated provisions cast in mandatory language does not transform an

5    otherwise suggestive set of guidelines into binding agency regulations." *Id.* at 677.

6    Second, if the conduct involves choice or discretion, courts must next determine

7    whether the judgment of the government employee "'is of the kind that the discretionary

8    function exception was designed to shield.'" *Marchiona*, 2023 WL 2558537, at *3 (quoting

9    *Gaubert*, 499 U.S. at 322-23).  The DFE is designed to "'prevent judicial second-guessing

10   of legislative and administrative decisions grounded in social, economic, and political

11   policy' through a tort action"—therefore, courts construe it as "protect[ing] only

12   governmental actions and decisions based on considerations of public policy." *Teplin v.

13   United States*, No. 17-CV-02445, 2018 WL 1471907, at *4 (N.D. Cal. Mar. 26, 2018); *see

14   also United States v. Varig Airlines*, 467 U.S. 797, 814 (1984).  Thus, the focus of this inquiry

15   is "whether the 'nature of the actions taken,' pursuant to an exercise of discretion, 'are

16   susceptible to policy analysis.'" *Teplin*, 2018 WL 1471907, at *4 (quoting *Gaubert*, 499

17   U.S. at 325); *see also Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005); *Nurse

18   v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000).

19   Importantly, the government need not "prove that it considered these factors and

20   made a conscious decision on the basis of them." *Kennewick Irr. Dist. v. United States*, 880

21   F.2d 1018, 1028 (9th Cir. 1989).  Indeed, under the second prong, subjective motive is

22   immaterial because "the focus" of the inquiry "is 'not on the agent's subjective intent in

23   exercising the discretion conferred by statute or regulation,' but rather 'on the nature of the

24   actions taken and on whether they are susceptible to policy analysis.'" *Gonzalez*, 814 F.3d

25   at 1027-28; *see also Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1127 (10th Cir.

26   1999) ("the exception's purpose compels dismissal of any claim whose ultimate resolution

27   would require judicial scrutiny of an official's good faith or subjective decisionmaking"); *id*.

28   at 1140 ("[I]t is sensible to allow judicial inquiry into bad faith and subjective

1    decisionmaking in a few exceptional cases under the APA, but to ban all FTCA suits that

2    necessitate that peculiarly disruptive inquiry … The exception must bar all suits dependent

3    on allegations of subjective bad faith if it is to serve its purposes[.]"); *Reynolds v. United*

4    *States*, 549 F.3d 1108, 1112 (7th Cir. 2008) (the DFE applies even where there are allegations

5    of "malicious and bad faith conduct" because "subjective intent is irrelevant to [the]

6    analysis").

7         Where relevant policies provide for discretion, it is presumed that the government's

8    actions are grounded in policy when exercising that discretion. *Lam*, 979 F.3d at 681.  And

9    the statutory text confirms that the exception applies "whether or not the discretion involved

10   [was] abused" by United States officials.  28 U.S.C. § 2680(a); *Routh v. United States*, 941

11   F.2d 853, 855 (9th Cir. 1991) ("Negligence is irrelevant to the discretionary function

12   inquiry."); H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.  If both prongs of the *Gaubert*

13   test are met, the DFE applies, the United States retains its sovereign immunity, the Court

14   lacks jurisdiction, and the claim must be dismissed.  *Nurse*, 226 F.3d at 1000.

15                   **b.    The DFE's Application to Plaintiffs' Claims.**

16        All of Plaintiffs' claims arise from the decision to refer the Parent Plaintiffs for

17   prosecution for unlawful entry or reentry, as applicable, and to detain them pending

18   immigration proceedings, resulting in the temporary separation of the Parent Plaintiffs from

19   the Child Plaintiffs.  All of Plaintiffs' claims are barred by the DFE because the challenged

20   decisions involved an element of judgment or choice and were susceptible to policy analysis.

21        The decisions which resulted in the separations are quintessentially discretionary.

22   The DFE plainly applies to decisions relating to the apprehension of noncitizens for unlawful

23   entry and referral for criminal prosecution.  Indeed, discretion "lies at the heart of the DHS

24   law enforcement function."  *Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir.

25   2020).  In exercising this function, DHS agents "make all the classic judgment calls the

26   discretionary function was meant to exempt from tort liability."  *Id*. Immigration policy

27   involves "vital national interests in law enforcement at the borders," and DHS officers'

28   "decisions in investigating and responding to potential violations of immigration law are

1    infused with public policy considerations." *Id*. at 217.  Thus, the decision to apprehend a

2    person and to refer for criminal prosecution is a discretionary decision beyond challenge.

3          The decisions surrounding whether and where to detain the Parent Plaintiffs for

4    proceedings were also discretionary and susceptible to policy analysis.  The government has

5    the express statutory authority to "arrange for appropriate places of detention for

6    [noncitizens] detained pending removal or a decision on removal."  8 U.S.C. § 1231(g)(1).[8]

7    "Congress has placed the responsibility of determining where [noncitizens] are detained

8    *within the discretion* of the [Secretary]."  *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d

9    1434, 1440 (9th Cir. 1986) (emphasis added); *see also Gandarillas-Zambrana v. BIA*, 44

10   F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the

11   location of detention"); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990)

12   (Attorney General has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d

13   427, 433 (10th Cir. 1999) (recognizing the "Attorney General's discretionary power to

14   transfer [noncitizens] from one locale to another, as she deems appropriate").

15         Decisions relating to noncitizens, including placement and detention, are so "vitally

16   and intricately interwoven with contemporaneous policies [and] so exclusively entrusted to

17   the political branches of government as to be largely immune from judicial inquiry or

18   interference."  *United States v. Lopez-Flores*, 63 F.3d 1468, 1474 (9th Cir. 1995) (quoting

19   *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952)); *see also Mirmehdi v. United*

20   *States*, 689 F.3d 975, 984 (9th Cir. 2012) ("Because the decision to detain [a noncitizen]

21   pending resolution of immigration proceedings is explicitly committed to the discretion of

22   the Attorney General and implicates issues of foreign policy, . . . it falls within [the DFE].");

23   *accord Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are

24   susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir.

25   2003) ("[A]ssignment to particular institutions or units . . . must be viewed as falling within

26   the discretionary function exception to the FTCA"); *Cohen v. United States*, 151 F.3d 1338,

27
28   _____
     [8]  Following the Homeland Security Act of 2002, many references in the Immigration and
     Nationality Act to the "Attorney General" mean the Secretary of Homeland Security.  *See*
     *Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

1342 (11th Cir. 1998) (decisions where to place prisoners are policy-based decisions protected by the DFE); *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995) (decisions whether to detain or release are policy-based decisions protected by the DFE); *Murillo v. United States Dep't of Justice*, No. CV 21-00425-TUC-CKL, 2022 WL 16745333, at *7 (D. Ariz. Nov. 7, 2022) ("[T]he Ninth Circuit has consistently concluded that actions taken in prisons fall under the [DFE]."); *see also Comm. of Cent. Am. Refugees*, 795 F.2d at 1440 ("Congress has placed the responsibility of determining where [noncitizens] are detained within the discretion of the Attorney General [now DHS Secretary]."); *Gandarillas-Zambrana*, 44 F.3d at 1256 ("The INS [now DHS] necessarily has the authority to determine the location of detention of [a noncitizen] in deportation proceedings . . . and therefore, to transfer [noncitizens] from one detention center to another."); *Sasso*, 735 F. Supp. at 1046 (finding that government has discretion over location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that "discretionary power to transfer [noncitizens] from one locale to another, as . . . deem[ed] appropriate, arises from" statute).

This discretion necessarily encompasses decisions regarding with whom a noncitizen will be detained, including whether adults and minors can be detained in the same facility and whether to detain family members together.  *See J.P.*, 2023 WL 4237331, at *6 ("[T]he Court finds that . . . the United States' decision to detain Plaintiffs at separate facilities, were acts of prosecutorial discretion subject to deference from the Court . . . Accordingly, the United States has satisfied the first prong of the *Gaubert* test. . . . [T]he Court [also] finds that Plaintiffs' detention and separation was firmly based upon public policy considerations; namely, the enforcement of immigration laws. The United States has thus established the second prong of the *Gaubert* test."); *see also Peña Arita v. United States*, 470 F. Supp. 3d 663, 691- 92 (S.D. Tex. 2020) (DFE protects decisions by DHS to separate family members). Although the Flores Agreement contains some requirements regarding detention of minors, it does not specifically prescribe any one course of action and therefore does not remove the government's discretion.  In particular, the Flores Agreement does not require the release of a parent or mandate that a parent be housed with a child, and indeed it does not apply to

1   parents at all. *Flores v. Lynch*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL

2   315759, at *14-15; *Bunikyte*, 2007 WL 1074070, at *16.

3          Here, Plaintiffs cite no statute, regulation, or policy in their Complaint that prescribed

4   a specific course of action that the government was required to take in connection with the

5   Parent Plaintiffs' referrals for prosecution and immigration detention. Moreover, Plaintiffs

6   are not able to direct this Court to any specific statute, regulation or policy that would have

7   required that the Parent Plaintiffs and Child Plaintiffs remain together during detention.

8   Instead, the challenged decisions were the result of the exercise of discretion and were also

9   susceptible to policy analysis. Accordingly, the exercise of the government's statutory

10  authority regarding whether and where to detain the Parent Plaintiffs for immigration

11  proceedings is protected by the DFE.

12         The DFE also covers CBP's determination that the Child Plaintiffs were each a UAC

13  within the meaning of the TVPRA. *See* 6 U.S.C. § 279(g)(2). Whether a parent is "available

14  to provide care and physical custody" is a policy question vested in federal officials. *See*

15  *D.B. v. Preston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded

16  discretion under the statutory scheme when classifying juveniles as unaccompanied

17  [noncitizen] children."), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016); *see*

18  *also Baie v. Secretary of Def.*, 784 F.2d 1375, 1377 (9th Cir. 1986) ("interpretation of the

19  statute is a plainly discretionary administrative act the 'nature and quantity' of which

20  Congress intended to shield from liability under the FTCA"); *Villanueva v. United States*,

21  708 F. Supp. 2d 960, 975 (D. Ariz. 2009) ("An agency's interpretation of its statutes and

22  regulations is protected by the [DFE]."). The DFE accordingly protects the government's

23  determination that, after the Parent Plaintiffs were referred for prosecution, the Child

24  Plaintiffs be designated unaccompanied and accordingly transferred to the custody of ORR.[9]

---

25  [9] In *C.M., et al., v. United States of Am.,* No. CV-19-05217-PHX-SRB, 2023 WL 7102132,
26  at *11 (D. Ariz. Oct. 24, 2023), the district court reasoned that the decision to refer a parent
    for prosecution does not categorically render the parent unavailable to take physical custody
27  of and provide physical care for his/her child. However, the district court did not explain
    how or why the following determinations are not within the discretion of CBP agents for
28  purposes of DFE analysis: (1) whether a parent can take physical custody of a child while
    the parent is in the physical custody of a third-party; (2) whether a parent can provide

- 21 -

*See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 287 (3d Cir. 1995) (holding that a decision is protected by the DFE when it "necessarily reflects the decisionmaker's judgment that it is more desirable to make a decision based on the currently available information than to wait for more complete data or more confirmation of the existing data").

### c. The DFE Bars Plaintiffs' Claims to the Extent They are Based on Conditions of Confinement.

To the extent that Plaintiffs challenge the conditions of their confinement, *see*, *e.g.*, Complaint, at ¶¶ 62, 72, 75, 78, 90, 101, 104, 105 and 113, those claims are also barred by the DFE.  Courts have repeatedly held that detainees' claims based on acts or omissions relating to conditions of confinement are barred by the DFE because they involve discretionary decisions susceptible to policy considerations.

For example, in *Peña Arita*, the court rejected the contention that transfer decisions including where and how to house detainees or provide medical care were "nondiscretionary," finding that government decision-making regarding conditions of confinement was "susceptible to policy analysis" and that the court "must generally defer to the expertise of prison officials and is not to substitute its judgment for the consideration of such officials."  470 F. Supp. 3d at 691; *see also Antonelli v. Crow*, No. CIV. 08-261, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims were barred by the DFE); *Lineberry v. United States*, No. 3:08-CV-0597, 2009 WL 763052, at *6 (N.D. Tex. Mar. 23, 2009) (The DFE bars "allegation of negligent overcrowding"); *Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) (BOP's provision of telephone services is "a matter committed to its discretion that will not be second-guessed through an FTCA claim"); *S.E.B.M. v. United States*, No. 1:21-CV-00095, 2023 WL 2383784, at *16 (D.N.M. Mar. 6, 2023) ("The *Flores* Agreement provides no time parameters for how long

physical care for a child when the parent receives all of his/her own physical care from a third-party; or (3) whether a particular facility has the capability of housing individual families separately.

1    or frequent calls between children and their family members should be.").

2              **d.    Plaintiffs' Assertions of Unconstitutional Conduct Do Not**
                **Preclude Application of the DFE in this Case.**
3

4          A plaintiff cannot circumvent the DFE simply by alleging a violation of a

5    constitutional right.  Congress did not create the FTCA to address constitutional violations

6    based on government policy generally, but rather to address violations of state tort law

7    committed by federal employees.  *See Meyer*, 510 U.S. at 477 (recognizing that "§ 1346(b)

8    does not provide a cause of action for" a "constitutional tort claim").   In *Gaubert*, the

9    Supreme Court held that, where "a federal statute, *policy*, or regulation specifically

10   prescribes a course of action for an employee to follow," there is no further discretion to

11   exercise.  499 U.S. at 322 (emphasis added).  The Constitution is no different: in some cases,

12   the Constitution may establish such a specific prescription that it removes an official's

13   discretion, but the requirement of specificity applies with the same force whether the

14   prescription is found in the Constitution or a statute.  And in *Nurse*, the Ninth Circuit held

15   that a constitutional violation "may" remove conduct from discretion but expressly left open

16   the question of "the level of specificity with which a constitutional proscription must be

17   articulated to remove the discretion of a federal actor."  226 F.3d at 1002 n.2; *see also Fazaga*

18   *v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1065 (9th Cir. 2020) ("[I]f the district court

19   instead determines that Defendants did violate a nondiscretionary federal constitutional . . .

20   directive, the FTCA claims may be able to proceed to that degree."), *rev'd on other grounds*,

21   142 S. Ct. 1051 (2022); *accord Garza v. United States*, 161 F. App'x 341, 343 (5th Cir.

22   2005) (holding that Eighth Amendment's prohibition against cruel and unusual punishment

23   did not define a course of action "specific enough to render [DFE] inapplicable").

24         Here, Plaintiffs do not allege the violation of any constitutional provision with the

25   degree of specificity required by *Gaubert*.  Plaintiffs allege generally that "the separation of

26   each of the [Parent Plaintiffs] from each of their respective [Child Plaintiffs] violated all of

27   the Plaintiffs' constitutional right to family integrity." Complaint, at ¶ 38.  But family

28   integrity is undoubtedly disturbed any time a parent is placed in custody for a criminal law

violation, whether in the immigration context or otherwise.  *See Peña Arita*, 470 F. Supp. 3d at 686-87 ("[O]nce the discretionary decision to prosecute is made, the separation of prisoners from their families is plainly legal."). Plaintiffs also do not allege the violation of a specific Constitutional right that was clearly established at the times relevant to their Complaint.  *See Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019) (rejecting "right to be detained in the same state as one's children, the right to be visited by children while in detention, or a general right to 'family unity' in the context of detention" stating "we . . . have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal."); *J.P.*, 2023 WL 4237331, at *9 ("To the extent, however, that Plaintiffs' claims are based on the constitutionality of the [Zero-Tolerance] Policy or its application to Plaintiffs, those allegations are barred by the FTCA."); *Ms. L. v. U.S. Immigration & Customs Enf't*, 310 F. Supp. 3d 1133, 1144 (S.D. Cal. 2018) (recognizing that "parents and children may lawfully be separated when the parent is placed in criminal custody"); *W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1133 (N.D. Ill. 2018) (same); *Payne-Barahona v. Gonzalez*, 474 F.3d 1, 2 & n.1 (1st Cir. 2007) (same). *See also Ms. L v. ICE*, 302 F. Supp. 3d 1149, 1159 n.3 (S.D. Cal. 2018) (plaintiffs did not challenge the decision to detain adult noncitizens while in removal proceedings for the "sound reasons" that the law calls for mandatory detention, with parole available in strictly limited circumstances).

Even if the alleged conduct were later found unconstitutional, the DFE still applies here.  As the Supreme Court has long recognized, conduct may be discretionary even if later determined to have violated the Constitution.  The common-law doctrine of official immunity thus applies to the exercise of "discretionary functions" even when conduct violates the Constitution, so long as the constitutional right was not defined sufficiently at the time of the act so that the official should have known the act was unconstitutional.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (discretionary functions shielded from liability insofar as conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").  Whether, in retrospect, the

1   separation of the Parent Plaintiffs from the Child Plaintiffs violated such a right has no

2   bearing on the application of the DFE in this case.  *See Denson v. United States*, 574 F.3d

3   1318, 1137-38 (11th Cir. 2009).[10]

4       Even before it specifically addressed the qualified immunity standards applicable to

5   federal employees, the Supreme Court in *Butz v. Economou*, 438 U.S. 478 (1978), explicitly

6   recognized the DFE's applicability even if alleged conduct might later be held

7   unconstitutional, holding that officials sued for constitutional violations were entitled to

8   qualified, but not absolute immunity.  The Court explained that otherwise, the recently

9   recognized *Bivens* remedy would be illusory, and, as relevant here, "no compensation would

10  be available from the Government, for the Tort Claims Act prohibits recovery for injuries

11  stemming from discretionary acts, even when that discretion has been abused." *Id*. at 505.

12  *Butz* and later decisions leave no doubt that conduct violating the Constitution may constitute

13  the type of abuse of discretion that falls within the scope of the DFE.

14      The Ninth Circuit has declined to decide "the level of specificity with which a

15  constitutional proscription must be articulated in order to remove the discretion of a federal

16  actor." *Nurse*, 226 F.3d at 1002 n.2; *Fazaga v. Fed. Bureau of Investigation*, 916 F.3d 1202,

17  1251 (9th Cir. 2019) ("[I]f the district court instead determines that Defendants did violate a

18  nondiscretionary federal constitutional . . . directive, the FTCA claims may be able to

19  proceed to that degree."), *rev'd on other grounds*, 142 S. Ct. 1051 (2022).  A court should

20  require the same level of specificity that would be required in determining whether a statute

21  leaves an employee with no discretion to abuse. In any event, whatever the precise standard,

22  it is not satisfied here.  Plaintiffs have identified nothing in the decisions of the Supreme

23  _____

24  [10] In other cases, district courts have held that the DFE is inapplicable because the plaintiffs
    alleged that the Constitution was violated.  *E.g.*, *C.M.*, 2023 WL 7102132, at *8-12.  But

25  those cases failed to follow the rule, established in *Gaubert*, that an official loses discretion
    only if a source of law "specifically prescribes" the course of conduct.  *See S.E.B.M.*, 2023

26  WL 2383784, at *15 ("[T]he government's prosecution of S.E.B.M.'s father, which
    immediately caused her to be separated from him, was a discretionary decision that violated

27  no federal law cited by the parties and which was protected from liability by the discretionary
    function exception to the FTCA."); *see also Peña Arita*, 470 F. Supp. 3d at 686 ("The

28  decision regarding whether to prosecute and ranking prosecution priorities are clearly
    protected discretionary decisions.").

1    Court or the Ninth Circuit that removed any official's discretion with respect to any of the

2    categories of asserted actions by "specifically prescrib[ing] a course of action for an

3    employee to follow." *Gaubert*, 499 U.S. at 322.

4              **3.**    **Exception for Actions Taken While Reasonably Executing the**
                         **Law.**
5

6              Plaintiffs' claim regarding the decision to transfer the Child Plaintiffs to ORR

7    custody is also independently precluded because the FTCA prevents the United States from

8    being held liable for a claim "based upon an act or omission of an employee of the

9    Government, exercising due care, in the execution of a statute or regulation, whether or not

10   such statute or regulation be valid."  28 U.S.C. § 2680(a).  In other words, if government

11   employees "act pursuant to and in furtherance of regulations," any resulting harm "is not

12   compensable" under the FTCA.  *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957);

13   *Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim based on "enforcement

14   of 'rules and regulations'" barred by § 2680(a)).

15             The exception "bars tests by tort action of the legality of statutes and regulations."

16   *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *see also* H.R. Res. 77-2245, 77th Cong.,

17   2d Sess., at 10 (noting that it was neither "desirable nor intended that the constitutionality of

18   legislation, or the legality of a rule or regulation should be tested through the medium of a

19   damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (FTCA

20   does not waive sovereign immunity for claims based on employees' acts "performed under

21   and in furtherance of the regulation . . . even though the regulation may be irregular or

22   ineffective").  The upshot is that when a government employee's actions are authorized by

23   statute or regulation—even if that statute or regulation is later found unconstitutional or

24   invalid—the claim must be dismissed.  *See Borquez v. United States*, 773 F.2d 1050, 1052-

25   53 (9th Cir. 1985); *Bob Davis Packing Co. v. United States*, 443 F. Supp. 589, 593 (W.D.

26   Tex. 1977), *aff'd* 584, F.2d 116 (5th Cir. 1978); *Sickman v. United States*, 184 F.2d 616, 619

27   (7th Cir. 1950); *FDIC v. Citizens Bank & Tr. Co. of Park Ridge, Ill.*, 592 F.2d 364, 366 (7th

28   Cir. 1979); *Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1160-61 & n.5 (1st Cir.

1987) (exception barred claim that FBI destroyed owner's prototype by dismantling it during criminal investigation); *Porter v. United States*, 473 F.2d 1329, 1337 (5th Cir. 1973) (exception barred property damage claim of Lee Harvey Oswald's widow, who alleged that, in carrying out their appointed functions, FBI personnel damaged documents and personal effects during investigation into Kennedy assassination).

Here, the United States is required to "transfer the custody" of children to the care of ORR "not later than 72 hours after" determining that there is no parent available to provide care and physical custody absent exceptional circumstances. 8 U.S.C. § 1232(b)(3).  CBP determined that the Child Plaintiffs were each a UAC on account of its discretionary decisions to refer the Parent Plaintiffs for prosecution and/or removal proceeding, as applicable.[11]  *See* Ex. 1, CBP Decl., at ¶¶ 3-6 (regarding N.R., I.E.C.G., M.V.A. and J.V.T.); *see also* Ex. 4, OFO Decl., at 3 (regarding E.A.G.V.); *see also S.E.B.M.*, 2023 WL 2383784, at *38 ("The act of charging, prosecuting, and jailing S.E.B.M's father made S.E.B.M. a UAC which in turn required her to be cared for elsewhere.").  The TVPRA then required that the Child Plaintiffs be transferred to ORR custody, and the enforcement of that statutory command—resulting in the families' separations—cannot form the basis of an FTCA claim.

### 4.    No Private Person Analogue.

All of Plaintiffs' claims must also be dismissed because the challenged government actions have no private-person analogue.  The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances." *Id*. § 2674.  The FTCA does not waive sovereign immunity for claims against the United States based on governmental action "of the type that private persons could not engage in

---

[11] As previously indicated, three of the Parent Plaintiffs were already subject to existing orders of removal. *See*, Ex. 2, ICE Decl., at ¶ 3 (noting that N.R. was subject to a prior order of removal), ¶ 8 (noting that I.E.C.G. was subject to a prior order of removal), and ¶ 16 (noting that E.A.G.V. was subject to a prior order of removal).

1    and hence could not be liable under local law."  *Chen v. United States*, 854 F.2d 622, 626

2    (2d Cir. 1988) (quotation omitted).

3         The FTCA "requires a court to look to the state-law liability of private entities, not

4    to that of public entities, when assessing the Government's liability under the FTCA [even]

5    in the performance of activities which private persons do not perform."  *United States v.*

6    *Olson*, 546 U.S. 43, 46 (2005) (quotation omitted); *Liranzo v. United States*, 690 F.3d 78, 86

7    (2d Cir. 2012).  While the analogue need not be exact, plaintiffs must offer "a persuasive

8    analogy" showing the government actor would be subject to liability under state law if a

9    private person.  *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).

10        Because only the United States has authority to enforce federal criminal and

11   immigration laws and make determinations concerning detention, there is no private person

12   analogue to support an FTCA claim.  The harms described in the Complaint stem from the

13   government's enforcement of federal immigration laws to hold parents in custody pending

14   prosecution and immigration proceedings, resulting in their children's placement in the care

15   and custody of ORR.  The United States has not waived its sovereign immunity for such

16   decisions to enforce federal law, and its decisions have no private-person counterpart.  *E.g.*,

17   *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (decision of whether

18   to take enforcement action under federal law was not conduct for which private individual

19   could be held liable and thus did not give rise to FTCA action); *Ryan v. ICE*, 974 F.3d 9, 26

20   (1st Cir. 2020) ("Controlling immigration and the presence of noncitizens within the country

21   are duties and powers vested exclusively in the sovereign."); *Elgamal v. Bernacke*, 714 F.

22   App'x 741, 742 (9th Cir. 2018) (in FTCA action, dismissing conspiracy claim and holding

23   "because no private person could be sued for anything sufficiently analogous to the negligent

24   denial of an immigration status adjustment application, that claim must be dismissed . . .");

25   *Elgamal v. United States*, No. CV-13-00867, 2015 WL 13648070, at *5 (D. Ariz. July 8,

26   2015) (recognizing that "immigration matters" are "an inherently governmental function");

27   *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) ("there is, as a general

28   matter, no private analogue to governmental withdrawal of immigration benefits"); *Mazur v.*

*United States*, 957 F. Supp. 1041, 1042-43 (N.D. Ill. 1997) (regarding naturalization of noncitizens, "only the United States has the power to act" and "there is no private analog[ue] under state law").

### 5.     Independent Contractor Exception.

Plaintiffs' allegations about the conditions the Child Plaintiffs experienced during their time in ORR custody, *see*, *e.g.*, Complaint, at ¶¶ 70, 79, 95, 107 and 111-112, are barred by the FTCA's independent contractor exception.  The FTCA "was never intended . . . to reach employees or agents of all federally funded programs that confer benefits on people." *United States v. Orleans*, 425 U.S. 807, 813 (1976).  It waives sovereign immunity only for tortious conduct of an "employee of the Government," and expressly "excludes 'any contractor with the United States.'"  *Id.* (quoting 28 U.S.C. § 2671).   The FTCA thus preserves immunity for torts committed by government contractors or their employees.  *Id.*

The Child Plaintiffs were all placed in ORR-contractor facilities.[12]  Plaintiffs allege that all the Child Plaintiffs suffered emotional harm, and some suffered physical harm, while in an ORR-contractor facility.  Complaint, at ¶¶ 70, 79, 95, 107 and 111-112.  This Court can take judicial notice that while in those facilities, the Child Plaintiffs were in the custody of ORR, but were being cared for by a private contractor.  *See Walding v. United States*, 955 F. Supp. 2d 759, 794-95 (W.D. Tex. 2013) (holding that an ORR grantee was an independent contractor).  Plaintiffs do not allege that the employees of the facilities where the Child Plaintiffs were housed were employees of the United States.  Nor could they credibly do so. ORR contractors that provide shelter and care for UACs are not employees of the United

---

[12] Plaintiffs specifically allege that A.C.C. and S.N.M.M. were placed in ORR-contractor facilities, and the United States agrees.  *See* Complaint, at ¶¶ 63-64 and 77; *see also* Ex. 3, ORR Decl., at ¶¶ 13-14.  Plaintiffs allege that B.V.M. was placed in care in Florida but did not specifically allege that B.V.M. was placed in an ORR-contractor facility in Florida. Complaint, at ¶ 87.  Nonetheless, B.V.M. was placed in an ORR-contractor facility.  *See* Ex. 3, ORR Decl., at ¶ 15.  Plaintiffs allege that V.E.V.H. was placed in care in Kansas but did not specifically allege that V.E.V.H. was placed in an ORR-contractor facility in Kansas. Complaint, at ¶ 100.  Nonetheless, V.E.V.H. was placed in an ORR-contractor facility.  *See* Ex. 3, ORR Decl., at ¶ 16.  Plaintiffs allege that Y.Y.G.P. was placed in care in Texas but did not specifically allege that Y.Y.G.P was placed in an ORR-contractor facility in Texas. Complaint, at ¶ 111.  Nonetheless, Y.Y.G.P. was placed in an ORR-contractor facility.  *See* Ex. 3, ORR Decl., at ¶ 17.

1    States within the meaning of the FTCA.  *Walding*, 955 F. Supp. 2d at 791-811 (independent

2    contractor exception barred claim that United States negligently failed to ensure health and

3    safety of minors housed at grantee facility).

4          "A critical element in distinguishing [a statutory employee] from a contractor is the

5    power of the Federal Government 'to control the detailed physical performance of the

6    contractor.'"  *Orleans*, 425 U.S. at 807.  This test excludes the programs that cared for the

7    Child Plaintiffs.  In *Logue v. United States*, 412 U.S. 521, 528 (1973), the Supreme Court

8    held that employees of a county jail that housed federal prisoners pursuant to a contract with

9    the Federal Bureau of Prisons ("BOP") were not government employees for the purposes of

10   the FTCA.  Although the contract required the jail to comply with BOP rules and regulations

11   prescribing standards of treatment, and the United States reserved rights of inspection to

12   enter the jail to determine its compliance with the contract, the contract did not authorize the

13   United States to physically supervise the jail's employees.  *Id.* at 528-32.  "In short, the

14   United States could take action to compel compliance with federal standards, but it did not

15   supervise operations."  *Orleans*, 425 U.S. at 813.

16         Thus, the FTCA's exclusion of contractors is not overcome by "[c]ontractual

17   provisions directing detailed performance," nor by "[d]etailed regulations and inspections,"

18   nor by "the ability to compel compliance with federal regulation."  *Autery v. United States*,

19   424 F.3d 944, 957 (9th Cir. 2005).  Rather, "[t]here must be *substantial supervision over the*

20   *day-to-day operations of the contractor* in order to find that the individual was acting as a

21   government employee."  *Id.* (emphasis added) (*quoting Letnes v. United States*, 820 F.2d

22   1517, 1519 (9th Cir. 1987)).  ORR does not exercise substantial supervision and control over

23   the "day-to-day operations" (*Autery*) or "detailed physical performance" (*Orleans*) of the

24   contractor-facilities here.  It only conducts general oversight to ensure compliance with

25   governing regulations, policies, and agreements.  *See* Ex. 3, ORR Decl., at ¶ 6.  Therefore,

26   as in *Logue* and *Walding*, the program staff are not employees of the government, and the

27   FTCA does not apply to them.

28         Plaintiffs also did not specifically allege that the ORR negligently selected or

- 30 -

negligently supervised the ORR-contractor facilities where the Child Plaintiffs were housed. Instead, Plaintiffs merely alleged that federal employee supervisors had a duty to supervise "contractors" generally and were negligent in their supervision.  *See* Complaint, at ¶¶ 131-132.  Even if Plaintiffs had specifically alleged that the ORR negligently selected or negligently supervised the ORR-contractor facilities where the Child Plaintiffs were housed, as *Walding* noted, the DFE bars such claims, because the selection of a contractor to provide custody and care of UACs is within ORR's policy-based discretion. 955 F. Supp. 2d at 771-72 ("[T]he ultimate choice of facility for housing unaccompanied [noncitizen] children is a decision vested with policy considerations").  ORR also has discretion with respect to its supervision of grantees, which involves "policy decisions concerning how to allocate its resources to oversee the facilities and personnel." *Id*. at 783; *see also Parker v. United States*, 500 F. App'x 630, 632 (9th Cir. 2012) ("The Ninth Circuit has stated that negligent supervision claims 'fall squarely within the discretionary function exception.'") (citing *Nurse*, 226 F.3d at 1001, and *Gager v. United States*, 149 F.3d 918, 921-22 (9th Cir.1998)); *see also In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 995 (9th Cir. 1987) (holding DFE barred claim that government negligently supervised a contractor).

### 6.    Misrepresentation Exception.

Plaintiffs' claims based on allegations that officials misled N.R. into believing that "he would not see S.N.M.M. again unless" he dropped his asylum claim and that he would be "reunited with S.N.M.M." if he signed a deportation document, Complaint, at ¶ 81, are additionally barred by the FTCA's misrepresentation exception.  The misrepresentation exception, 28 U.S.C. § 2680(h), prohibits claims from proceeding under the FTCA "arising out of" misrepresentation or deceit.  *Id*.  Accordingly, any claim by N.R. based on the allegation that he was misled by federal officers cannot proceed.  *Miller Harness Co. v. United States*, 241 F.2d 781, 783 (2d Cir. 1957); *In re FEMA Trailer Formaldehyde Product Liability Litigation*, 713 F.3d 807 (5th Cir. 2013) (misrepresentation exception barred claim that FEMA failed to disclose that trailers it used for emergency housing emitted formaldehyde); *Wong v. Beebe*, No. CIV 01 718, 2007 WL 1170621, at *25-27 (D. Or. Apr.

10, 2007) (misrepresentation exception barred noncitizen's claim that INS sent her a deceitful letter to induce her to appear at an INS office), *rev'd on other grounds*, 381 F. App'x 715 (9th Cir. 2010).

### 7.    Abuse of Process Exception

Plaintiffs' claims based on allegations that that the acts committed by the "government's employees, officials, and contractors" constituted an abuse of process, *see* Complaint, at ¶¶ 138-39, are additionally barred, in part, by the FTC's abuse of process exception.  The abuse of process exception, 28 U.S.C. § 2680(h), prohibits claims from proceeding under the FTCA "arising out of" abuse of process and certain other intentional torts, unless committed by "investigative or law enforcement officers of the United States Government."  Thus, Plaintiffs' abuse of process claim must be dismissed to the extent it is based on acts committed by anyone other than "investigative or law enforcement officers" of the United States. Importantly, "§ 2680(h)'s law enforcement proviso was intended to provide remedies for victims of law enforcement abuses, not for the routine and lawful exercise of law enforcement privileges." *Tekle v. United States*, 511 F.3d 839, 852 (9th Cir. 2007) (quotations omitted).

### B.    Plaintiffs Have Failed to State a Claim Under Rule 12(b)(6).

Even if the Court concludes that it has subject matter jurisdiction over Plaintiffs' claims, which it should not, Plaintiffs' claims should still be dismissed for failure to state a claim upon which relief may be granted.  Under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A complaint's allegations must give defendants "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotations omitted). The federal pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Plaintiffs have not pleaded facts that could support the essential elements of their claims, and these claims

should be dismissed for this reason as well.

**1.    The United States' Conduct was Privileged.**

The applicable law in an FTCA action is the law of the state where the alleged tortious act or omission occurred. *See* 28 U.S.C. § 1346(b)(1). Consequently, the Ninth Circuit has recognized that both state privilege law, in addition to federal privilege law, applies to FTCA claims. *See Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir.2004) ("Applying California law, which 'protects a law enforcement officer from liability for false arrest . . .' we conclude that the United States is not liable under the FTCA.").

Law enforcement's actions to enforce existing laws are privileged and/or subject to immunity under both state and federal law. *See Spooner v. City of Phoenix*, 246 Ariz. 119, 124, 435 P.3d 462, 467 (App. 2018) ("By its very nature, investigative police work is discretionary and appropriate for exemption from suit for simple negligence."); *Portonova v. Wilkinson*, 128 Ariz. 501, 503, 627 P.2d 232, 234 (1981) ("It has been recognized that in Arizona a police officer acting within the scope of his authority has at least a conditional immunity from civil liability."); *see also Caban v. United States*, 728 F.2d 68, 74 (2d Cir. 1984) (false imprisonment claim was not actionable because INS's detention of plaintiff pursuant to federal statutory authority was privileged). Here, the challenged conduct—the separations of the Parent Plaintiffs from the Child Plaintiffs—was a direct result of the initiation of the removal and/or criminal process for the Parent Plaintiffs and their subsequent detention in immigration custody. This law enforcement conduct was authorized by both federal and state law. Accordingly, the conduct was privileged, and the United States cannot be held liable. *See Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (App. 1995) (holding that, although employer engaged in conduct that could be viewed as extreme and outrageous, the conduct was not actionable because it was accompanied by a "legitimate" purpose); *accord Learner v. John Hancock Life Ins. Co.*, No. CV-09-01933-PHX-ROS, 2011 WL 13185713, at *3 (D. Ariz. Mar. 31, 2011); *see also S.E.B.M.*, 2023 WL 2383784, at *8 (IIED claim not actionable under New Mexico law where government's action in separating parent and child "were protected by its privilege to prosecute").

1          **2.      Plaintiffs Failed to State an IIED Claim (Count I).**

2          Plaintiffs failed to state a claim for IIED.  Under Arizona law, to state a claim for

3    IIED, a plaintiff must allege (1) the conduct of defendant was "extreme" and "outrageous,"

4    (2) defendant intended to cause emotional distress or recklessly disregarded the near

5    certainty that such conduct would result from his conduct, and (3) severe emotional distress

6    did occur as a result of defendant's conduct.  *Citizen Publishing Co. v. Miller*, 210 Ariz. 513,

7    517, 115 P.3d 107, 111 (2005); *Wells Fargo Bank v. Arizona Laborers, Teamsters, and*

8    *Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 38 P.3d 12 (2002)

9    (discussing difference between negligent and intentional torts).  A court must consider

10   "whether the alleged actions are 'so outrageous in character and so extreme in degree, as to

11   go beyond all possible bounds of decency, and to be regarded as atrocious and utterly

12   intolerable in a civilized community[.]'" *Morgan v. Freightliner of Arizona*, LLC, No. CV

13   16-498-TUC-CKL, 2017 WL 2423491, at *8 (D. Ariz. June 5, 2017) (quoting *Mintz v. Bell*

14   *Atlantic Systems Leasing Intern, Inc.*, 183 Ariz. 550, 54, 905 P.2d 559, 563 (App. 1995)).

15         Plaintiffs' IIED claims are primarily based on the Parent Plaintiffs' separation from

16   the Child Plaintiffs, which was a direct result of enforcement of federal law.  *See* Complaint,

17   at ¶¶ 69-71, 73, 84-85, 93-96, 106-107 and 114-115.  There is no basis in Arizona for IIED

18   claims arising out of a lawful arrest and detention.  *See, e.g., Savage v. Boise*, 272 P.2d 349,

19   352 (Ariz. 1954) (lawful arrest and detention cannot form basis for tort claim); *Rondelli v.*

20   *Pima County*, 120 Ariz. 483, 490, 586 P.2d 1295, 1302 (App.1978) (rejecting IIED claim as

21   a matter of law by appellant who claimed he was "stereotyped," "detained," "searched and

22   handcuffed outside his car in full view of . . . his neighbors and friends," "treated as a

23   dangerous criminal" for failing to file tax return, and "falsely arrested"); *see also*

24   Restatement (Second) of Torts § 46, comment g (conduct is privileged when the actor

25   "insist[s] upon his legal rights in a permissible way, even though he is well aware that such

26   insistence is certain to cause emotional distress.")

27         **3.      Plaintiffs Failed to State a Negligence Claim (Count II).**

28         Plaintiffs failed to state a negligence claim. To state a negligence claim under

Arizona law, a plaintiff must allege sufficient facts to support the following elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143 (Ariz. 2007). "To bring a colorable FTCA claim, Plaintiff must first meet the minimum pleading standards required to state an underlying negligence claim against a federal employee for which the Government can then be held liable." *Lee*, 2020 WL 6573258, at *6. Plaintiffs have failed to do so.

Plaintiffs allege that "federal employees, officials, and contractors referenced above had a legal duty to Plaintiffs to act with ordinary care and prudence so as not to cause harm or injury to Plaintiffs," as well as a "mandatory non-discretionary duties including, but not limited to, those imposed by the U.S. Constitution, the *Flores* consent decree, federal statutes, federal regulations, and international treaties that the U.S. has ratified." Complaint, at ¶¶ 123-124. First, Plaintiffs did not identify the source of Arizona law imposing an applicable duty, *see Delta Sav. Bank v. United States*, 265 F.3d 1017, 1025 (9th Cir. 2001) (noting "any duty that the United States owed to plaintiffs must be found in . . . state tort law"). Second, even if Defendant owed Plaintiffs a duty of care while they were in custody, that duty, and any alleged breach thereof, would be separate and distinct from the alleged duty upon which Plaintiffs' claims are based (*i.e.*, an alleged duty not to separate the Parent Plaintiffs from the Child Plaintiffs pending criminal or immigration proceedings).[13]

In addition to failing to identify the specific duty that serves as a basis for Plaintiffs' negligence claims, the Complaint does not identify the specific conduct that Plaintiffs claim to have been negligent.[14] Instead, Plaintiffs merely allege that the federal government and

---

[13] In *C.M.*, No. CV-19-05217-PHX-SRB, 2023 WL 7102132, at *15, the district court recognized that federal immigration officials owe a duty of care to detainees that is like the duty of care owned by a jailer to a prisoner. However, the district court in *C.M.* did not distinguish between the general duty of care in the jailer-prisoner context and a specific duty that would have required federal immigration officials to house adults and minors together during their detainment for violation of federal immigration laws.

[14] To the extent Plaintiffs' negligence claims are based on a duty of care owed *while they*

1    unidentified federal employees referenced throughout the Complaint "failed to act with

2    ordinary care and breached their duty of care owed to Plaintiffs," Complaint, at ¶ 125,

3    without specifying what particular acts or omissions serve as the basis of their negligence

4    claim.  Courts in this District have not hesitated to dismiss FTCA suits that relied on general

5    allegations against unspecified federal employees and that failed to plead how any specific

6    federal employee breached a specific duty of care.[15]

7           Plaintiffs must allege sufficient facts—not simply "labels and conclusions" or

8    [t]hreadbare recitals of the elements of a cause of action"—that would give the government

9    "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at

10   555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 678.  "Absent specific

11   allegations regarding the roles and responsibilities of individual federal employees, how each

12   employee breached his or her duties of care," including the specific conduct alleged to have

13   breached said duties, "and how their negligent conduct caused [Plaintiffs] harm," Plaintiffs'

14   allegations are "too vague and conclusory" to give the United States fair notice of Plaintiffs'

15   *were in custody*, Plaintiffs have neither identified the specific details of the standard of care,
16   as opposed the general statement that a duty is owed, nor alleged how the government failed
     to provide reasonable care under the circumstances.  To the extent Plaintiffs' negligence
17   claims are based on a duty of care owed *during the initial detention and family separations*,
     the Complaint is void of specific factual allegations that any particular federal employee
18   "was negligent in performing his or her responsibilities" relating to the family separations,
     "or how any of the particular employee's negligent acts or omissions contributed" to
19   Plaintiffs' injuries.  *See Lee*, 2020 WL 6573258, at *6.

20   [15] *See, e.g., Lee*, 2020 WL 6573258, at *5-6 (holding "allegations—generically stated and
     shared by up to a dozen federal employees— are insufficient to state an FTCA claim against
21   the Government"); *Tsosie v. United States*, No. CV-18-00494-PHX-SPL, 2019 WL
     2476601, at *4-5 (D. Ariz. Jun. 13, 2019) (dismissing FTCA claim holding that plaintiffs'
22   "failure to name specific healthcare providers in the Complaint or identify how these
     providers were negligent does nothing more than make conclusory statements"); *Snyder v.*
23   *United States*, No. CV-12-01405-PHX-DGC, 2013 WL 1867008, at *1 (D. Ariz. May 2,
     2013) (dismissing FTCA claim holding, while the complaint "mentions many doctors . . .
24   and generally asserts that they engaged in various forms of misconduct," plaintiff has not
     "pled specific facts as to how any of the individual doctors" breached a duty of care); *Mathis*
25   *v. United States*, No. CV-10-8157-PCT-FJM, 2011 WL 4352291, at *1 (D. Ariz. Sept. 16,
     2011) (holding "claims asserted against unnamed 'medical staff' are insufficient to state a .
26   . . claim under Rule 8"); *Dominguez ex rel. Dominguez Rivera v. Corbett*, Nos. CV-08-648-
     TUC-DCB and CIV-09-474-UTC-DCB, 2010 WL 3619432, at *7-8 (D. Ariz. Aug. 5, 2010)
27   (dismissing FTCA claim holding claim "does not contain facts regarding any individual
     employee (by either name or description), who, acting within the scope of their employment,
28   committed a tort against Plaintiff").

negligence claim and the grounds upon which it rests.  *See Lee*, 2020 WL 6573258, at *7. Accordingly, Plaintiffs' negligence claim should be dismissed for failure to state a claim under Rule 12(b)(6), Federal Rules of Civil Procedure.

### 4.    Plaintiffs Failed to State a Negligent Supervision Claim (Count III).

Under Arizona law, an employer cannot be held liable for negligent supervision unless an employee committed a tort.  *Kuehn v. Stanley*, 91 P.3d 346, 352 (App. 2004) (citing *Mulhern v. City of Scottsdale*, 799 P.2d 15, 18 (App. 1990)).  Thus, if the theory that an employee committed an underlying tort fails, any claim against the employer for negligent supervision fails as a matter of law.  *Id*.

Plaintiffs' other tort claims fail for the various reasons set forth herein.  Therefore, Plaintiffs' claim for negligent supervision fails as a matter of law.

### 5.    Plaintiffs Failed to State an Abuse of Process Claim (Count IV).

Under Arizona law, an abuse of process claim arises from the misuse of judicially-sanctioned processes, as opposed to prelitigation acts.  *See Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 257-58, 92 P.3d 882, 887-88 (App. 2004).  To prove a claim for abuse of process, the plaintiff bears the burden of proving the following four elements: (1) the defendant willfully used against the plaintiff a specific judicially-sanctioned process; (2) the defendant used that process in a wrongful manner that was not proper in the regular course of the proceedings; (3) the defendant used that process primarily for an improper purpose or ulterior motive; and (4) the defendant's wrongful use of that process caused injury, damage, loss, or harm to the plaintiff.  *See* Arizona Pattern Jury Instructions—Civil (7th ed.), Intentional Torts 18.1 (Abuse of Process – Elements of Liability) (citations omitted).

In *Parker v. United States*, the plaintiffs argued that the Small Business Administration's "abusive investigation" is a "process" actionable under the tort of abuse of process.  No. CV 10-1407-PHX-SRB, 2011 WL 13189942, at *8 (D. Ariz. May 6, 2011), *aff'd*, 500 F. App'x 630 (9th Cir. 2012).  In rejecting the plaintiffs' argument and dismissing the plaintiffs' abuse of process claim pursuant to Rule 12(b)(6), Federal Rules of Civil

Procedure, the District Court reasoned: "[t]he Complaint does not allege that the investigation conducted by . . . the SBA implicated any *judicial mechanisms*, and the investigation was not undertaken *pursuant to the authority of the court, nor did it involve a court process*." *Id*. (emphasis added).

Like the plaintiffs in *Parker*, Plaintiffs failed to identify in their Complaint the precise judicially-sanctioned process that was allegedly abused by the United States. Instead, Plaintiffs imprecisely and vaguely allege "[t]he government's employees, officials, and contactors maliciously abused otherwise legally and properly issued legal processes . . ." Complaint, at ¶ 138. Additionally, allegations of bad intentions are not enough to state a claim for abuse of process. *See Nienstedt v. Wetzel*, 133 Ariz. 348, 353, 651 P.2d 876, 881 (App. 1982) ("[T]he authorities recognize that there is no liability when the defendant has done nothing more than legitimately utilize the process for its authorized purposes, even though with bad intentions."). Plaintiffs' conclusory statements, as opposed to factual allegations, do not state a claim for abuse of process under Arizona law.

### 6.    Plaintiffs Failed to State a Loss of Consortium (Count V).

Under Arizona law, "[l]oss of consortium is a derivative claim, so it cannot exist unless 'all elements of the underlying cause [are] proven.'"  *Martin v. Medtronic, Inc.*, 32 F. Supp. 3d 1026, 1046 (D. Ariz. 2014) (citing *Tavilla v. City of Phoenix,* Case No. 1 CA–CV 10–0429, 2011 WL 4794940, at *9 (Ariz. App. Oct. 11, 2011) (quoting *Barnes v. Outlaw,* 192 Ariz. 283, 964 P.2d 484, 486-87 (1998)). Thus, a loss of consortium claim can only survive a motion to dismiss to the extent the underlying claim survives. *Id*.

Plaintiffs' other tort claims fail for the various reasons set forth herein. Therefore, Plaintiffs' claim for loss of consortium fails as a matter of law.

## V.    CONCLUSION.

For the foregoing reasons, the United States respectfully requests that this Court dismiss Plaintiffs' claims.

RESPECTFULLY SUBMITTED November 28, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*/s/ Gabriel A. Peraza*
SARAH S. LETZKUS
GABRIEL A. PERAZA
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Patricia Kakalec
Hugh Baran
Kakalec Law PLLC
195 Montague Street, 14th Floor
Brooklyn, NY 11201
(212) 705-8730
Patricia@KakalecLaw.com
Hugh@KakalecLaw.com
*Admitted pro hac vice*

Robert McCreanor
Law Office of Robert D. McCreanor, P.L.L.C.
245 Saw Mill River Road
Suite 106
Hawthorne, NY 10532
(845) 202-1833
rmccreanor@rdmclegal.com
*Admitted pro hac vice*

*Attorneys for Plaintiffs*

s/L. Conlisk